# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATHAN A. SAUNDERS,  :
 :
    Plaintiff,  :  Civil Action No.:  15-cv-2026 (RC)
 :
    v.  :  Re Document Nos.:  15, 16, 19, 20
 :
ELIZABETH DAVIS, *et al.*,  :
    Defendants.  :

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTIONS TO DISMISS

## I.  INTRODUCTION

Plaintiff Nathan A. Saunders, proceeding *pro se*, brings this suit alleging that numerous Defendants engaged in misconduct in the management of the Washington Teachers' Union's ("WTU") Option 2 Voluntary Employee Beneficiary Association Trust (the "Trust").[1]  The Trust was created to provide supplemental unemployment benefits to teachers in the District of Columbia Public Schools ("DCPS") who met certain conditions.  Mr. Saunders, who seeks a wide range of remedies, names fourteen Defendants, all associated in different ways with the Trust.  Specifically, Mr. Saunders brings suit against: Elizabeth Davis, Jackie Hines, Michael White, Pauline Baker, John Hammond, Ray Mobley, Dorothy Egbufor, and the Trust itself (collectively, "Board Affiliate Defendants");[2] Darryl Anderson, Peter Leff, Lee Jackson, and the

---

[1] The Complaint and the motions to dismiss refer to the Trust in a variety of ways. *Compare* Compl. at 3, ECF No. 1 (referring to the Trust as the "Voluntary Employee Beneficiary Association (VEBA) – Washington Teachers' Union (WTU) Option 2 VEBA") *with* Defs. Davis, et al. Mot. Dismiss ("Board Affiliates' Mot. Dismiss") at 1, ECF No. 15 (referring to the Trust as the "the WTU Option 2 Benefit VEBA Trust").  To avoid confusion, the Court will simply refer to it as "the Trust."

[2] Board Affiliate Defendants note that the Complaint misspells the names of Mr. White and Ms. Egbufor and "slightly misstates the name" of the Trust.  *See* Board Affiliates' Mot.

law firm O'Donnell, Schwartz, & Anderson, P.C. (collectively, "Attorney Defendants"); Calibre

CPA Group, PLLC ("Calibre"); and Secretary Thomas Perez of the United States Department of

Labor.  *See* Compl. at 1–2, ECF No. 1.

Four sets of Defendants separately move to dismiss the Complaint on a variety of

grounds.  The Court first considers whether it has jurisdiction.  For the reasons explained below,

the Court finds that sovereign immunity bars Mr. Saunders's claims against Secretary Perez.

The Court will therefore dismiss those claims pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure for lack of subject matter jurisdiction.  The Court also finds that Mr. Saunders

fails to state a claim upon which relief can be granted under the Employee Retirement Income

Security Act ("ERISA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and

various federal criminal statutes.  The Court will therefore dismiss those portions of the

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Because the Court

dismisses all of Mr. Saunders's federal law claims, the Court declines to exercise supplemental

jurisdiction over the remaining state law claims.  Finally, the Court will deny Mr. Saunders's

request that the Court appoint counsel to represent him in this case and his request for leave to

amend his claims.

## II.  FACTUAL & PROCEDURAL BACKGROUND

### A.  Factual Background[3]

This case arises from a dispute over the administration of the Trust, which was created

---

Dismiss at 1 n.1; *see also* Compl. at 1–2.  The names have been corrected throughout the Court's
opinion.

[3] When considering a motion to dismiss for failure to state a claim or for lack of subject
matter jurisdiction, a court "accepts the allegations of the complaint as true."  *Banneker
Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).  The Court may also consider
"documents attached as exhibits or incorporated by reference in the complaint."  *Ward v. D.C.*

for the benefit of certain teachers employed by DCPS.  The allegations are rooted in the fallout

from the WTU's disputed presidential election in 2013 and subsequent questions about the

election's implications on the management of the Trust.

Mr. Saunders is a member of the WTU.  *See* Compl. at 4; Compl. Attach. 17 at 124.[4]

Prior to the events giving rise to this case, Mr. Saunders was elected President of the WTU.  *See*

Compl. Attach. 2 at 75; Compl. Attach. 5 at 79–81.  During Mr. Saunders's term in office and

while acting on behalf of the WTU, he signed a document that created the Trust (the "Trust

Agreement").  *See* Compl. Attach. 2 at 75; *see also* Compl. at 6 ("The WTU Option 2 VEBA

creation was a multi-year project by Plaintiff.").  Mr. Saunders was also a signatory to the

Memorandum of Agreement between the WTU and the DCPS that provided for DCPS's

financial contributions to the Trust, *see* Compl. Attach. 4 at 78, and to the Trust's "Plan

Document," *see* Compl. Attach. 1 at 47.

The Trust was the result of collective bargaining between the WTU and DCPS.  *See*

Compl. Attach. 1 at 33; Compl. Attach. 2 at 48; Compl. Attach. 4 at 77; Compl. Attach. 8 at 86.

The Trust was created to provide supplemental unemployment benefits for DCPS teachers who

had been laid off—or "excessed" in the official terminology—if those teachers met certain

criteria.  *See* Compl. Attach. 1 at 34–35; Compl. Attach. 4 at 77; Compl. Attach. 8 at 89–90.

---

*Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

[4] The Court, in accordance with the Complaint, will refer to the Complaint's supporting documents as attachments.  The Court notes that Mr. Saunders appears to have skipped the numbers 12, 13, 15, and 16 when labeling his attachments.  Because the Complaint does not reference attachments of those numbers, the Court is not concerned that any relevant material is missing from the record.  The attachments are labeled by hand.  Some, but not all, of the attached documents are separately paginated.  To avoid confusion, the Court will cite the page numbers automatically generated by the Court's ECF system, even where an attachment contains pre-existing page numbers.

Specifically, teachers were required to achieve a particular score on their most recent evaluation, attain permanent teacher status, and work in the DCPS system for a minimum number of years to be eligible for benefits.  *See* Compl. Attach. 4 at 77; Compl. Attach. 8 at 89–90.  The Trust, which makes payments to eligible teachers who apply for benefits, was intended to be funded by DCPS through annual payments of $1.7 million.  *See* Compl. Attach. 4 at 77; *see also* Compl. at 6 ("The end result [of Plaintiff's efforts] was a Memorandum of Agreement funded by the employer.").  DCPS and the WTU have subsequently disagreed over a number of issues related to the Trust, and the Trust forced to suspend the payment of all benefits in 2015 because DCPS did not make its annual funding payments.  *See* Compl. Attach. 10 at 119 ("Unfortunately, DCPS funded the [Trust] in the first year but has withheld funding for the last two years."); Compl. Attach. 11 at 122 ("DCPS has refused to make its last two contributions to [the Trust].").  Mr. Saunders asserts that "Defendants' transgressions are the sole reason for nonpayment . . . as opposed to employer recalcitrance as reported by Defendants."  Compl. at 15.

The Trust Agreement established a process to select trustees.  *See* Compl. Attach. 2 at 55.  The relevant provision, Section 3.01, states in full:

> Designation of Trustees.  Persons holding the following positions with the Union shall serve as the Trustees and shall be considered the "named fiduciaries," "fiduciaries," and the "plan administrator" as those terms are defined in ERISA:
>
> > 1.  President of the Union who shall serve as the Chairman of the Board and have a two year term;
> >
> > 2.  One Vice President of Education who is also a member of the Executive Board of the Union who shall have a two year term;
> >
> > 3.  One other member of the Executive Board of the Union, as appointed by the Chairman, who shall have an initial one year term and then two year terms thereafter;
> >
> > 4.  Treasurer of the Union who shall have a two year term;

5. One Field Service Specialist of the Union, as appointed by the Chairman, who shall have an initial one year term and then two year terms thereafter.

*Id.*[5]

According to the Complaint, WTU officials, including Mr. Saunders, stood for election in May 2013. *See* Compl. at 11. Mr. Saunders faced Defendant Elizabeth Davis in his bid to be re-elected as WTU President. *See id.* After a close election and a subsequent, contested runoff, Mr. Saunders filed an "appeal to the 2013 WTU Runoff Election," however, on "July 31, 2013 Plaintiff Saunders withdrew his election challenge and vacated the WTU Presidency." *See* Compl. Attach. 5 at 80; *see also* Compl. at 11. Ms. Davis entered office as President of the WTU on August 1, 2013. *See* Compl. at 11. On April 27, 2015, Mr. Saunders sent a letter to Secretary Perez and the Chancellor of DCPS raising concerns with purported "financial and other improprieties" associated with the Trust. *See* Compl. Attach. 19 at 131; *see also* Compl. at 10 ("Plaintiff complained to the Department of Labor, and D.C. Public schools among others.").

### B. Mr. Saunders's Allegations

The core of Mr. Saunders's Complaint is that his defeat as WTU President did not alter his role in managing the Trust. In support of that position, Mr. Saunders argues that the

---

[5] Board Affiliate Defendants note that Mr. Saunders's version of the document was amended after Mr. Saunders vacated his role as leader of the WTU. *See* Reply Mem. Supp. Mot. Dismiss Defs. Davis, et al. ("Board Affiliates' Reply") at 4–5, ECF No. 24; *see also id.* Ex. C at 1, ECF No. 24-3. Board Affiliate Defendants cite the current, amended Section 3.01 which reads: "*The following persons shall serve* as the Trustees and shall be considered the 'named fiduciaries', 'fiduciaries' and the 'plan administrator' as those terms are defined in ERISA." *Id.* Ex. C at 1 (emphasis added). Board Affiliate Defendants argue that the Court may consider the amendments to the Trust Agreement because Mr. Saunders attached the original version to his Complaint. *See* Board Affiliates' Reply at 4 n.3 (citing *Licorish-Davis v. Mitchell*, No. 12-0601, 2013 WL 2217491, *2 n.4 (S.D.N.Y. May 20, 2013). The Court need not address that argument, because the difference between the original and amended versions is immaterial for the purposes of the Court's analysis.

"Original and Proper" Board of Trustees must be made up of the members who were on the board prior to the 2013 election. *See* Compl. at 12–13. Mr. Saunders states that he is the rightful "fiduciary based trustee-Chairperson of the WTU Option 2 VEBA Board of Trustees," and that the current board is "not the properly constituted and seated WTU Option 2 VEBA Board of Trustees." *Id.* In other words, Mr. Saunders's position is that Ms. Davis may have won the WTU Presidency in the 2013 election, but the election did not permit her to take over Mr. Saunders's position as Chairman of the Board of Trustees. *See* Pl.'s Mem. Resp. Defs.' Mots. Dismiss ("Pl.'s Opp'n") at 11, ECF No. 23.

Specifically, Mr. Saunders argues that "[t]he loss of a political union election can not be used as a basis for removal from the VEBA Board" and that "WTU elections are not controlling" on the question of who should run the Trust. *Id.* at 11–12. Mr. Saunders notes that he "worked 2 hard years" to create the Trust under the assumption that his continued involvement would not be dependent upon the upcoming WTU election. *See id.* at 12 Mr. Saunders points to the Trust Agreement and argues that "[u]nion elected office is not a requirement for VEBA trusteeship participation, plan participation, or plan rights," *see* Compl. at 11, and therefore, that "Defendants Davis, Hammond, White, Hines . . . had no authority to act and are not the properly constituted and seated WTU Option 2 VEBA Board of Trustees," *id.* at 12.

Mr. Saunders ultimately alleges that because the post-2013 Board of Trustees is "not the properly constituted and seated WTU Option 2 VEBA Board of Trustees," each of the Defendants, "individually and collectively," violated a number of statutes and caused harm to Mr. Saunders and others. *See id.* at 12, 15. Because he asserts that the Board of Trustees took their positions illegally, he alleges that those individuals committed fraud when they took subsequent actions to manage the Trust, including relatively routine acts such as using the

Trust's credit cards.  *Id.* at 12–13.  The legal foundations of Mr. Saunders's allegations include both civil and criminal violations of federal and state laws.  *See id.* at 4–6.

Mr. Saunders asserts that the Defendants' alleged actions constitute a RICO violation. *See id.* at 5–6; *see also* 18 U.S.C. § 1961.  The Complaint's RICO allegations are based on a range of purported predicate criminal acts, including mail fraud, wire fraud, bank fraud, credit card fraud, identification fraud, and computer fraud.  *See* Compl. at 5–6 (citing 18 U.S.C. §§ 1028, 1029, 1030,[6] 1341, 1343, 1344).  Mr. Saunders also appears to assert these alleged criminal violations as separate causes of action.  *See id.* ("Plaintiff makes claims under[a list of criminal statutes].").  The Complaint also alleges a series of violations of ERISA.  *Id.* at 4–5. Specifically, Mr. Saunders alleges that Defendants failed to provide required information, breached their fiduciary duties, and failed to provide benefits required by the terms of the plan. *See* Compl. at 4–5; *see also* 29 U.S.C. §§ 1021–25 (reporting requirements); 29 U.S.C. §§ 1104– 09 (fiduciary duties); 29 U.S.C. § 1132(a)(1)(B) (private right of action to enforce plan terms).

Mr. Saunders also brings a number of nonfederal claims.  Mr. Saunders alleges violations of the District of Columbia Merit Personnel Act and the District of Columbia Retirement Act. *See* Compl. at 5 (citing D.C. Code §§ 1-618.02, 1-702(20), 1-747(a)(2)).  He also cites provisions of the D.C. Code found in the chapter related to the Police Officers, Fire Fighters, and Teachers Retirement Benefit Replacement Plan.  *See id.* (citing D.C. Code §§ 1-901.02(7); 1- 911.01(a)(2)).  Mr. Saunders alleges that Defendants' actions constitute "tortious interference" because they allegedly "constructively and secretly disbanded the Original and Proper VEBA Board of Trustees while intercepting the $1.75 million trust fund check."  *Id.* at 12.  In his

---

[6] The Court notes that 18 U.S.C. § 1030 is not a predicate offense for the purposes of RICO.  *See* 18 U.S.C. § 1961(1).

opposition to the motions to dismiss, Mr. Saunders also alleges that the Attorney Defendants'

malpractice is responsible for $6.8 million in harm and "this VEBA's demise."  Pl.'s Opp'n at 5–

7; *see also id.* at 17 ("The WTU and VEBA Attorney defendants . . . did not employ ordinary

and common legal skill.").

### C.  Motions before the Court

Four sets of Defendants have moved separately to dismiss Mr. Saunders's Complaint.

Board Affiliate Defendants move to dismiss the ERISA claims for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1) and to dismiss the remainder of the Complaint for failure

to state a claim pursuant to Rule 12(b)(6).  *See generally* Mem. Supp. Mot. Dismiss Defs. Davis,

et al. ("Board Affiliates' Mem.") at 2, ECF No. 15.  Calibre moves to dismiss the Complaint for

failure to state a claim pursuant to Rule 12(b)(6).  *See generally* Mem. Supp. Def. Calibre CPA

Group, PLLC Mot. Dismiss ("Calibre Mem."), ECF No. 16-1.  Secretary Perez moves to dismiss

the Complaint under Rule 12(b)(1) because Mr. Saunders's claims against the Secretary are

barred by sovereign immunity.  *See generally* Mot. Dismiss Sec. Labor Action & Supp. Mem. P.

& A. ("Perez Mot. Dismiss"), ECF No. 19.  Attorney Defendants move to dismiss the Complaint

pursuant to Rule 12(b)(6).  *See generally* Mem. Supp. Defs. O'Donnell, Schwartz, & Anderson,

P.C., et al. Mot. Dismiss ("Att'y Defs.' Mem."), ECF No. 20-1.  After all Defendants moved to

dismiss, the Court issued an Order reminding Mr. Saunders of his obligation to respond to the

motions.  *See* Order, ECF No. 21.  Mr. Saunders filed an omnibus opposition to the motions,

which also reiterated his request that "the federal court . . . appoint legal counsel to assist Pro Se

Plaintiff in the resolution of this matter."  Pl.'s Opp'n at 15; *see also* Compl. at 24.  In support of

that position, Mr. Saunders argued that "the federal court could appoint[] Plaintiff counsel and all

parties will have a level playing field."  Pl.'s Opp'n at 15.  Each set of moving parties filed a

reply in support of their motion.  *See* Reply Mem. Supp. Mot. Dismiss Defs. Davis, et al. ("Board Affiliates' Reply"), ECF No. 24; Defs. O'Donnell, Schwartz, & Anderson, P.C., et al. Reply Pl.'s Opp'n Defs.' Mot. Dismiss ("Att'y Defs.' Reply"), ECF No. 25; Reply Supp. Def. Calibre CPA Group's Mot. Dismiss ("Calibre Reply), ECF No. 26; Reply Mem. Supp. Sec. Labor's Mot. Dismiss, ECF No. 27.  Defendants' motions are now fully briefed and ripe for decision.

## III.  DISCUSSION

The Defendants, filing separately, move to dismiss the Complaint in its entirety on a number of different grounds.  Each of the motions to dismiss, however, argues either that the Court lacks subject matter jurisdiction over claims against Defendants or that the Complaint fails to state a claim upon which relief can be granted.  The Court first considers the question of subject matter jurisdiction, and finds that sovereign immunity bars Mr. Saunders's claims against Secretary Perez.  Next, the Court finds that the Complaint's federal causes of action fail to state a claim upon which relief can be granted.  Specifically, the ERISA claims are barred because the Trust is a government plan.  Mr. Saunders also has failed to allege the necessary elements of a RICO claim, and his citations to various federal criminal statutes fail to state a claim.  Because the Court will dismiss all federal law claims, the Court will decline to exercise supplemental jurisdiction over Mr. Saunders's state law claims.  Thus, the Court will grant the motions to dismiss and dismiss the Complaint as to all remaining Defendants.  Finally, Mr. Saunders's request for appointment of counsel and request for leave to amend are denied.

### A.  Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Secretary Perez moves to dismiss,

arguing that the Court lacks subject matter jurisdiction because sovereign immunity bars Mr.

Saunders's claims.  *See* Perez Mot. Dismiss at 1.  The Court finds that it does not have subject

matter jurisdiction over claims against Secretary Perez because Mr. Saunders has failed to

demonstrate a relevant waiver of sovereign immunity.  Thus, the Court will dismiss Mr.

Saunders's claims against Secretary Perez.

Board Affiliate Defendants also move to dismiss and argue that this Court lacks subject

matter jurisdiction over Mr. Saunders's ERISA claims.  *See* Board Affiliates' Mot. Dismiss at 1.

Specifically, Board Affiliate Defendants argue that because the Trust is a government plan, it is

excluded from ERISA under 29 U.S.C. § 1003(b)(1), and therefore this Court lacks subject

matter jurisdiction to address Mr. Saunders's ERISA claims.  *See* Board Affiliates' Mem. at 2.

Although the Court agrees that the Trust is a government plan that is exempt from ERISA, the

Court does not believe that this issue is properly considered in the context of subject matter

jurisdiction.  Instead, the Court will construe Board Affiliate Defendants' argument as a motion

to dismiss for failure to state a claim.  *See infra* Part III.B.2.a.

### 1.  Applicable Legal Standard

A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by

lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*,

429 U.S. 97, 106 (1976)).  But even *pro se* litigants "must comply with the Federal Rules of

Civil Procedure."  *Idrogo v. Foxx*, 990 F. Supp. 2d 5, 6 (D.D.C. 2013) (citing *Jarrell v. Tisch*, 656

F. Supp. 237, 239 (D.D.C. 1987)).  Federal Rule of Civil Procedure 12(b)(1) provides for the

dismissal of an action for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside

this limited jurisdiction."  *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  It is the plaintiff's burden to establish that the court has subject matter jurisdiction.  *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).  To determine whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

### 2.  Analysis

Secretary Perez argues that sovereign immunity bars Mr. Saunders's claims against him.  *See* Perez Mot. Dismiss at 3.  The Court agrees, and finds that Mr. Saunders has failed to provide sufficient authority showing that the government has waived sovereign immunity in this context.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013).  The government may waive immunity, but such a waiver "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  To survive a motion to dismiss under Rule 12(b)(1), "[t]he plaintiff bears the burden of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign immunity." *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, at 80 (D.D.C. 2012) (first citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); then citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003); and then citing

*Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006)).

In April 2015, Mr. Saunders sent a letter to Secretary Perez and the Chancellor of DCPS that asked Secretary Perez to investigate purported "financial and other improprieties" associated with the management of the Trust. *See* Compl. Attach. 19 at 130; *see also* Compl. at 10. In this action, Mr. Saunders alleges that Secretary Perez failed to investigate the contentions contained in the letter and he now seeks "judicial review of actions or inaction by the Secretary." *See* Compl. at 5. Mr. Saunders, who bears the burden of establishing the government's waiver of sovereign immunity, points to two bases for his claim against Secretary Perez. First, Mr. Saunders relies on "ERISA 502(k)," which is codified at 29 U.S.C. § 1132(k) and allows a private party to bring suit against the Secretary of Labor. *See id.* at 5; *see also* 29 U.S.C. § 1132(k). Second, Mr. Saunders asserts that "[r]ecourse against the Secretary is also provided under the Administrative Procedure Act ['APA'] which is incorporated by reference in ERISA § 507."[7] Compl. at 5.

Section 1132(k) provides the only independent waiver of sovereign immunity found in ERISA. *See Shanbaum v. United States*, 32 F.3d 180, 182 n.2 (5th Cir. 1994). The waiver permits an administrator, fiduciary, participant, or beneficiary to bring suit only to (1) "review a final order of the Secretary," (2) "restrain the Secretary from taking any action contrary to the provisions of this chapter," or (3) "compel [the Secretary] to take action required under this subchapter." 29 U.S.C. § 1132(k). Mr. Saunders has not alleged that Secretary Perez issued any

---

[7] Mr. Saunders's citation to "ERISA § 507" is a reference to 29 U.S.C. § 1137(a). The relevant portion of that statute states, "Subchapter II of chapter 5, and chapter 7, of Title 5 (relating to administrative procedure), shall be applicable to this subchapter." *See* 29 U.S.C. § 1137. Subchapter II of Chapter 5 of the APA addresses agency rulemaking and adjudication. *See* 5 U.S.C. §§ 551–59. Chapter 7, which is relevant to this case, addresses judicial review of agency action. *See* 5 U.S.C. §§ 701–06.

final order or that Secretary Perez took any action contrary to ERISA.  Instead, Mr. Saunders

objects to Secretary Perez's refusal to investigate the Trust and seeks to compel the Secretary to

act.  *See* Compl. at 5, 10; Pl.'s Opp'n at 18–19; *see also* Compl. Attach. 19 at 130–132.

However, as Secretary Perez correctly argues, Mr. Saunders has not pointed to any provision of

ERISA that *requires* "the Secretary to investigate every allegation of wrongdoing."  Perez Mot.

Dismiss at 3.  Instead, Section 1132 states that a "civil action *may* be brought" by the Secretary

to enforce the provisions of ERISA.  29 U.S.C. § 1132(a) (emphasis added).  Other courts in this

District have held that Section 1132 "provides the Secretary with the *discretion* to investigate

and bring suit with respect to a particular pension plan." *Cox v. Sec'y of Labor*, 739 F. Supp. 28,

30 (D.D.C. 1990).  Because the Court finds that Secretary Perez was not "required" by ERISA to

investigate the allegations in Mr. Saunders's letter, Section 1132's limited waiver of sovereign

immunity does not apply to Mr. Saunders's claims against Secretary Perez.

　　　　Mr. Saunders also invokes the APA's waiver of sovereign immunity, which is explicitly

incorporated in ERISA.  *See* 29 U.S.C. § 1137(a).  Section 702 of the APA, codified at 5 U.S.C.

§ 702, creates a private right of action and waives the federal government's sovereign immunity

where a party brings suit "seeking relief other than money damages." 5 U.S.C. § 702.  Crucially,

however, this waiver does not apply where "agency action is committed to agency discretion by

law." 5 U.S.C. § 701(a)(2).  For the reasons previously described, ERISA does not require the

Secretary to investigate every allegation of malfeasance.  Instead, those decisions are committed

to agency discretion.  *See* 29 U.S.C. § 1132(a).  This result is consistent with longstanding

Supreme Court precedent that "an agency's decision not to prosecute or enforce . . . is a decision

generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831,

834 (1985) (recognizing "a general presumption of unreviewability of decisions not to enforce"

in a suit by a union employee requesting that the Secretary of Labor investigate and file suit to set aside a union election).[8]

For these reasons, the Court concludes that Mr. Saunders has failed to meet his burden to establish subject matter jurisdiction and to establish a waiver of the federal government's sovereign immunity.  Accordingly, the Court will dismiss Mr. Saunders's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to the extent it raises claims against Secretary Perez.

### B.  Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Board Affiliate Defendants, Calibre, and Attorney Defendants move to dismiss the Complaint because it fails to state a claim upon which relief can be granted.  Even taking as true all facts alleged in the Complaint, its attachments, and the opposition filed by Mr. Saunders, the Court finds that Mr. Saunders's federal law allegations fail to state a claim upon which relief can be granted.  Thus, the Court will dismiss Mr. Saunders's Complaint, to the extent it alleges claims under federal law, pursuant to Rule 12(b)(6).

### 1.  Applicable Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam).

---

[8] Because the Court finds that Secretary Perez's decision not to investigate was "committed to agency discretion," *see* 5 U.S.C. § 701(a)(2), the Court does not need to address Secretary Perez's argument that the Court should "infer" that "ERISA does not authorize judicial review of a decision" not to investigate.  *See* Perez Mot. Dismiss at 5; *see also* 5 U.S.C. § 701(a)(1).

A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g., United States v. Philip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal,* 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See id.*; *see also Twombly,* 550 U.S. at 555.

A court cannot consider matters outside the pleadings in deciding a Rule 12(b)(6) motion, but it may consider "documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave-Schmidt v. Chao,* 226 F. Supp. 2d 191, 196 (D.D.C. 2002)). Further, a *pro se* plaintiff's pleadings must be "considered *in toto*" to determine whether they "set out allegations sufficient to survive dismissal." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015) (reversing the district court because it failed to

consider allegations found in a *pro se* plaintiff's opposition to a motion to dismiss).

When a plaintiff alleges fraud, the complaint must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This heightened pleading standard requires a complaint to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks omitted) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)).  The plaintiff must also "identify individuals allegedly involved in the fraud."  *United States ex rel. Williams*, 389 F.3d at 1256.

## 2.  Analysis

The Complaint contains a laundry list of claims against "the Defendants," without specifying which Defendant is allegedly responsible for which claim.  Additionally, Mr. Saunders's omnibus opposition to the motions to dismiss appears to shift the bulk of his claims from one group of defendants to another.  *Compare* Compl. at 24–25 (providing no mention of malpractice) *with* Pl.'s Opp'n at 5–7 (alleging that Attorney Defendants' malpractice is responsible for $6.8 million in harm and "this VEBA's demise") *and* Pl.'s Opp'n at 17 ("The WTU and VEBA Attorney defendants . . . did not employ ordinary and common legal skill . . . . Their defective work product is at the center of Plaintiff['s] claims.").  Because of Mr. Saunders's *pro se* status, the Court considers claims found in his opposition as well as the claims found in the Complaint.  *See Brown*, 789 F.3d at 151.

### a.  ERISA Exemption

Mr. Saunders alleges that Defendants' management of the Trust comprised a number of

ERISA violations.[9]  *See generally* Compl.  Specifically, Mr. Saunders alleges that Defendants

failed to provide necessary information, breached their fiduciary duties, and failed to provide

benefits required by the terms of the plan.  *See id.* at 4–5; *see also* 29 U.S.C. §§ 1021–25

(reporting requirements); 29 U.S.C. §§ 1104–09 (fiduciary duties); 29 U.S.C. § 1132(a)(1)(B)

(private right of action to enforce plan terms).  Board Affiliate Defendants move to dismiss Mr.

Saunders's ERISA claims, arguing that because the Trust is not a government plan, it is exempt

from ERISA and the Court lacks subject matter jurisdiction.  *See* Board Affiliates' Mem. at 11–

14.[10]

At the outset, the Court notes that Board Affiliate Defendants purport to bring a

jurisdictional challenge to Mr. Saunders's ERISA claims.  *Id.* at 11.  In fact, some courts appear

to evaluate the applicability of ERISA's government plan exemption under the framework of

subject matter jurisdiction.  *See, e.g., Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004)

("[W]e affirm the district court's order dismissing this case for lack of subject matter.").

Nevertheless, this Court is cognizant of the Supreme Court's admonition against "drive-by

jurisdictional rulings."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).  In

*Arbaugh v. Y&H Corp.*, the Supreme Court held that a provision of Title VII stating that the law

only applied to employers with a sufficient number of employees related to the adequacy of the

---

[9] The Complaint is not always clear as to which of the various Defendants Mr. Saunders believes is responsible for each of the purported violations.

[10] Notably, Attorney Defendants took no position on this issue in their motion to dismiss. *See* Att'y Defs.' Mem. at 9 n.3.  In their reply, Attorney Defendants state: "Although [Attorney Defendants] are of the opinion that the [Trust] was properly initially set-up and operated as an ERISA plan based on the facts and circumstances at that time, whether the [Trust] is an ERISA plan or a governmental plan has no bearing on any issue other than whether this Court has subject matter jurisdiction. . . ." Att'y Defs.' Reply at 2 n.1.  Attorney Defendants concede that the Trust's status as a government plan is relevant to considering whether Mr. Saunder's ERISA claims should be dismissed. *Id.*  Secretary Perez acknowledges this argument, but relies exclusively on sovereign immunity. *See* Perez Mot. Dismiss at 1.

plaintiff's claims, not to the court's jurisdiction to hear the case.  546 U.S. 500, 516 (2006).

Congress can, of course, craft jurisdictional thresholds as it pleases, but "when Congress does

not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as

nonjurisdictional in character." *Id.* at 516.  The relevant ERISA provision makes no reference to

the jurisdiction of the federal courts.  *See generally* 29 U.S.C. § 1003.  Instead, the applicability

of the government plan exemption relates to the merits of Mr. Saunders's case.  Thus, the Court

will construe Board Affiliate Defendants' motion on this point as a motion to dismiss for failure

to state a claim under Rule 12(b)(6).  The substance of Board Affiliate Defendants' argument—

that the Trust is a government plan exempt from ERISA—remains the same.  The Court agrees

with Board Affiliate Defendants and will therefore dismiss Mr. Saunders's ERISA claims.

"ERISA is a comprehensive statute designed to promote the interests of employees and

their beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90

(1983); *see also* 29 U.S.C. § 1001(b) (noting that ERISA was enacted "to protect . . . employee

benefit plans and their beneficiaries").  The statute is clear, however, that the provisions of

ERISA "shall not apply to any employee benefit plan if . . . such plan is a governmental plan."

29 U.S.C. § 1003(b)(1).[11]  ERISA defines a "governmental plan" as "a plan established or

maintained for its employees by the Government of the United States, by the government of any

State or political subdivision thereof, or by any agency or instrumentality of any of the

foregoing."  29 U.S.C. § 1002(32).  The Second Circuit, relying on legislative history, explained

that "Congressional reluctance to interfere with the administration of public retirement plans is in

---

[11] The parties do not dispute that the Trust is an "employee benefit plan" as that term is used in 29 U.S.C. § 1003 and defined in 29 U.S.C. § 1002(3).  At any rate, that question is irrelevant to the Court's analysis because, to the extent that the Trust is an employee benefit plan, it falls into the governmental plan exemption.

part based on principles of federalism." *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 914 (2d Cir. 1987). Congress also believed that government plans "were more generous than private plans with respect to their vesting provisions" and that government entities could rely on their taxing powers as "an adequate substitute for both minimum funding standards and plan termination insurance." *Id.* (relying on the relevant House and Senate Reports).

Board Affiliate Defendants argue that the Trust at issue here is a government plan, and the Court agrees. Government plans are exempt from ERISA if they are "established or maintained" by "the government of any State or political subdivision thereof, or by any agency or instrumentality" of a state for the benefit of its employees. 29 U.S.C. § 1002(32). ERISA's definition of "State" includes the District of Columbia. *See* 29 U.S.C. § 1002(10). Multiple courts have found that school districts are "political subdivisions" of a state government for the purposes of this analysis.[12] *See Gualandi*, 385 F.3d at 243–44; *Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 677 (8th Cir. 1999); *Dickerson v. District of Columbia*, 70 F. Supp. 3d 311, 327 (D.D.C. 2014) (stating that ERISA does not apply to governmental benefit plans such as the plan at issue, which benefited DCPS employees); *Montoya v. ING Life Ins. & Annuity Co.*, 653 F. Supp. 2d 344, 350–51 (S.D.N.Y. 2009); *Feinstein v. Lewis*, 477 F. Supp. 1256, 1259 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 573 (2d Cir. 1980). The Department of Labor has reached the same conclusion, explaining that "[i]t is well established that . . . a public school district constitutes a

---

[12] To determine whether an entity is an "agency or instrumentality" of a state or local government, the D.C. Circuit has crafted a test that focuses on the "employment relationships" between the employer and employees. *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1206 (D.C. Cir. 1993). That case focused on the much more difficult question of whether the Federal Asset Disposition Association was an agency or instrumentality of the federal government. A school district is a much simpler case, especially because a school district implicates federalism concerns that were not present in *Alley*. *See id.* at 1205 n.11 ("Because [the Federal Asset Disposition Association] was affiliated with the United States Government, such federalism concerns are not implicated in this case.").

governmental agency, instrumentality, or political subdivision for purposes of § 3(32) of ERISA."  U.S. Dep't of Labor, Opinion Letter No. 04-01A, 2004 WL 322573, at *3 (Jan. 27, 2004); *see also* U.S. Dep't of Labor, Opinion Letter No. 95-15A, 1995 WL 406909, at *2 (June 26, 1995) ("The school districts are agencies or instrumentalities or political subdivisions of state and local government, and the Trust was established and is maintained by those school districts to provide . . . benefits to the employees of these governmental entities.").[13]

The final question is whether the Trust was "established *or* maintained" by the District or its instrumentality for the benefit of its employees.  *See* 29 U.S.C. § 1002(32) (emphasis added). As Board Affiliate Defendants correctly argue, this is a disjunctive test that will be satisfied if the Trust was established *or* maintained by the District or its instrumentality.  *See* Board Affiliates' Mem. at 12; *see also Gualandi*, 385 F.3d at 242; *Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443, 450 (5th Cir. 1995); *Hall v. Maine Mun. Emps. Health Tr.*, 93 F. Supp. 2d 73, 79 (D. Me. 2000); *Triplett v. United Behavioral Health Sys., Inc.*, No. 98-3065, 1999 WL 238944, at *3 (E.D. Pa. Mar. 29, 1999).  Thus, if the Trust was established by a government entity, it falls within the government plan exemption regardless of whether the government entity also manages the Trust.

---

[13] Board Affiliate Defendants do not argue that the Department of Labor opinion letters are binding on this Court.  *See* Board Affiliates' Mem. at 13 n.9.  The parties do not address the level of deference, if any, that the Court owes the opinion letters.  The agency's opinion letters "are at least 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'"  *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 48 (2d Cir. 2002) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)).  In other words, even if the letters are "not controlling upon the courts by reason of their authority, [they] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  At any rate, because the Court agrees with the Department of Labor's position, there is no need to decide the level of deference required or whether the Court would be obligated to defer to the opinion letters if the Court disagreed with the agency's interpretation.  *See Marcella*, 293 F.3d at 48.

Taking the Complaint and its attachments as true, the Trust was created through the collective bargaining of the WTU and DCPS.  *See* Compl. Attach. 1 at 33; Compl. Attach. 2 at 48; Compl. Attach. 4 at 77; Compl. Attach. 8 at 86.  DCPS—a government employer—is solely responsible for funding the Trust.  *See* Compl. at 6; Compl. Attach. 1 at 33 ("Contributions to the Trust Fund . . . are made solely by DCPS."); Compl. Attach. 2 at 48; Compl. Attach. 4 at 77; Compl. Attach. 8 at 100.  Furthermore, the Trust is intended to benefit only current and former DCPS employees.  *See* Compl. Attach. 1 at 30; (Trust is intended to provide various "benefits for the benefit of eligible Teachers represented by the Union."); *id.* at 34 (stating participation is available to active teachers and retired teachers); Compl. Attach. 8 at 88.  The WTU is responsible for administering the trust, *see* Compl. Attach. 2 at 48, 52, but for the reasons previously described, that distinction does not alter the Court's analysis of which entity "established" the trust.  *See* 29 U.S.C. § 1002(32).

Both courts and the Department of Labor have determined that an employee benefit plan exclusively funded by a governmental entity are "established" by that entity, and thus exempt from ERISA.  *See, e.g., Gualandi*, 385 F.3d at 243–44 ("We therefore hold that exclusive governmental funding is enough to constitute governmental establishment of a plan.); U.S. Dep't of Labor, Opinion No. 99-15A, 1999 WL 1252003, at *2 (Nov. 19, 1999); U.S. Dep't of Labor, Opinion No. 97-20A, 1997 WL 560600, at *2 (Sept. 8, 1997).[14]  Taking the facts as alleged by Mr. Saunders, the Trust is exclusively funded by DCPS and is thus a government plan not subject to ERISA.  The fact that the Trust was the product of collective bargaining does not

---

[14] In fact, as Board Affiliate Defendants correctly argue, a plan may be considered a government plan even when a *de minimis* number of non-government employees are involved. *See, e.g., Kirkpatrick v. Merit Behavioral Care Corp.*, 70 F. Supp. 2d 443, 448 (D. Vt. 1999). There is no evidence here that the Trust involved participants who were not current or former DCPS employees.

change the analysis.  Courts that have considered the question have held that a plan, such as the

Trust, established by a government employer through collective bargaining are except from

ERISA to the same extent as plans created by statute, ordinance, or some other mechanism.  *See*

*Rose*, 828 F.2d at 920; *Triplett*, 1999 WL 238944, at *2; *Kirkpatrick*, 70 F. Supp. 2d at 447 n.3;

*Lovelace v. Prudential Ins. Co.*, 775 F. Supp. 228, 229 (S.D. Ohio 1991).

Mr. Saunders correctly points out that the Trust's founding documents are peppered with

references to ERISA.  *See, e.g.,* Compl. at 8; Compl. Attach. 1 at 30, 42; Compl. Attach. 2 at 50,

64; Pl's. Opp'n at 2, 5–7.  In his opposition to the motions to dismiss, Mr. Saunders asserts that

the "four corners" of the founding documents show that the WTU and DCPS intended to "be

bound by ERISA or ERISA like protections and processes."  Pl's. Opp'n at 3.[15]  Although Mr.

Saunders's argument may be commonsensical, it must fail.  The language in the Trust's founding

documents does not determine whether the Trust is subject to ERISA.  The ERISA statute, not

the parties' intentions, controls the outcome of this case.  The law is clear that the provisions of

ERISA "shall not apply to any employee benefit plan if . . . such plan is a governmental plan."

29 U.S.C. § 1003(b)(1).  Courts that have considered similar cases have reached the same

conclusion.  *See, e.g., Hall*, 93 F. Supp. 2d at 75 ("[D]esire and compliance do not an ERISA

plan make. A benefit plan does not choose whether to opt in or opt out of ERISA."); *Triplett*,

1999 WL 238944, at *3 ("There is no reason to think that a plan's determination of its status

---

[15] In other portions of his opposition, Mr. Saunders acknowledges "the recently
discovered government funded VEBA exemption," and appears to concede that the Trust is a
government plan. *See* Pl.'s Opp'n at 19; *see also id.* at 3 ("Exemption from ERISA pursuant to
29 U.S.C. § 1003(b)(1) does not mean Plaintiff's case is null and void despite Defendants
assertions . . . Errors and mistakes in contracts, unfortunately, occur all the time."); *id.* at 5 ("The
Option 2 VEBA is not subject to the provisions of ERISA is an overwhelming revelation!").  The
Court need not decide whether Mr. Saunders conceded the issue, however, because the Court has
considered the question and finds that the Trust is a government plan that is exempt from
ERISA.

under ERISA is any more meaningful than any litigant's determination of its status under any statute."); *Clark v. Grp. Plan for Emps. of N. Tonawanda Pub. Schs.*, 845 F.Supp. 117, 120 (W.D.N.Y. 1994) (finding that a government plan was exempt from ERISA despite a "statement of ERISA rights" in the group plan booklet).

Thus, the Court finds that, despite the language of the Trust's founding documents, the Trust is a government plan established by DCPS.  Because Congress explicitly exempted government plans from the provisions of ERISA, Mr. Saunders's allegations, taken as true, cannot state a claim upon which relief can be granted.  The Court will dismiss Mr. Saunders's ERISA claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[16]

### b. RICO

Mr. Saunders also alleges a civil RICO claim against the Defendants.  *See* Compl. at 5. The Complaint includes a wide range of allegations that appear to form the basis for Mr. Saunders's RICO claim.  Central to his theory of the case, Mr. Saunders alleges that "Defendants disguised themselves as the Original and Proper trustees to financial institutions, the employer, and plan participants." *Id.* at 11–12.  Mr. Saunders brings a number of allegations that flow from that theory.  For one, Mr. Saunders alleges that "[t]he Defendants manufactured documents." *Id.* at 8–9.  He also alleges that Defendants "[c]reated a bogus bank account(s) to control and spend VEBA cash." *Id.* at 12.  Perhaps most seriously, Mr. Saunders alleges that:

> Defendants knowingly and intentionally exerted power and authority via manipulation of mail, electronic bank transfers, checks, etc. over the VEBA's $1.75 million cash assets and secreted  those actions from the Original and Proper trustees, the employer, DC Government/DCPS, plan participants, and beneficiaries.

---

[16] Because the Court finds that the Trust is a government plan exempt from ERISA, the Court does not reach Calibre's arguments about the substance of those claims.  *See* Calibre Mem. 6–10.  For the same reasons, the Court does not reach Attorney Defendants arguments addressing the substance of Mr. Saunders's ERISA claims.  *See* Att'y Defs.' Mem. at 9–12.

*Id.* at 14.  Mr. Saunders further alleges that "$30,000 worth of fitness and wellness equipment

. . . disappeared off the financial records."  *Id.* at 17.  Finally, the Complaint asserts that "[g]ross

mismanagement, negligence, and fraud by the Defendants[] is the reason [a deceased plan

participant's] beneficiaries were not paid."  *Id.* at 20.

Board Affiliate Defendants, Calibre, and Attorney Defendants move to dismiss the RICO

claims for failure to state a claim pursuant to Rule 12(b)(6).  *See* Board Affiliates' Mem. at 15–

18; Calibre Mem. at 12–13; Att'y Defs.' Mem. at 13–14.  The motions argue that Mr. Saunders

fails to provide sufficient factual material to meet the heightened pleading standard for fraud

claims found in Rule 9(b).  *See* Board Affiliates' Mem. at 18; Calibre Mem. at 5, 13; Att'y Defs.'

Mem. at 14.  In his opposition to the motions to dismiss, Mr. Saunders lists several bullet points

referring to his earlier RICO allegations.  *See* Pl.'s Opp'n at 17–18.  Mr. Saunders asserts that the

Defendants "made illegal payments and loans to labor organizations by embezzlement of union

funds;" distributed materials they knew or should have known were incorrect; and "participated

in . . . obstruction of justice, obstruction of state or local law . . . [and] wire and mail fraud."  *Id.*

In light of the heightened pleading standard for fraud, the Court finds that Mr. Saunders's RICO

claim fails to state a claim and will be dismissed.

A plaintiff asserting a claim under RICO must allege the following elements: "(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Zernik v. U.S.*

*Dep't of Justice*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009) (quoting *Pyramid Secs. Ltd. v. IB*

*Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991)).  The RICO statute defines "pattern of

racketeering activity" as requiring the commission of at least two predicate racketeering offenses

within a ten-year period.  *See* 18 U.S.C. § 1961(5).  "Predicate offenses satisfying the statute

include acts punishable under certain state and federal criminal laws, such as mail and wire

fraud." *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 281 (D.D.C. 2011) (citing 18 U.S.C. § 1961(1)(B)). The predicate acts must be related and must "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Where the alleged predicate act that forms the basis for the RICO claim involves fraud, the predicate act must be plead with the particularity required by Federal Rule of Civil Procedure 9(b). *See United States ex rel. Yelverton v. Fed. Ins. Co.*, --- F.3d ---, No. 15-7045, 2016 WL 4151238, at *4 (D.C. Cir. Aug. 5, 2016); *see also Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015) (explaining that a plaintiff must "plead predicate acts with particularity to satisfy Federal Rule of Civil Procedure 9(b)"). Rule 9(b) creates a heightened pleading standard for allegations of fraud and requires a complaint to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, Mr. Saunders must allege "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," as well as the specific individuals involved. *United States ex rel. Williams*, 389 F.3d at 1256 (internal quotation marks omitted) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)). Each of the alleged predicate acts are rooted in various criminal fraud statutes. *See* Compl. at 5–6 (citing 18 U.S.C. §§ 1028, 1029, 1030, 1341, 1343, 1344). In other words, Mr. Saunders must allege with specificity the "who, what, when, where, and how" related to his fraud claims. *Brink v. XE Holding, LLC*, 910 F. Supp. 2d 242, 255 n.12 (D.D.C. 2012), *aff'd in relevant part sub nom, Brink v. Cont'l Ins. Co.*, 787 F.3d at 1127.

Mr. Saunders's Complaint fails to meet this heightened standard. As noted by multiple Defendants, the Complaint generally does not refer to specific Defendants in its numerous allegations. *See* Board Affiliates' Mem. at 5; Calibre Mem. at 12. Nor does the Complaint tie

specific Defendants to specific acts of fraud.  Neither the Complaint nor Mr. Saunders's

opposition to the motions states with specificity who, precisely, was involved in which alleged

fraud claims, when the various fraud claims occurred, or what facts were misrepresented by

which Defendants.  *See United States ex rel. Williams*, 389 F.3d at 1256–57.

Mr. Saunders responds to the motions by restating that his "100 plus page complaint

[has] more than enough details concerning alleged transgressions."  Pl.'s Opp'n at 16.  Although

Mr. Saunders's allegations are lengthy, they are not specific.  Mr. Saunders refers back to the

attachments to his Complaint that he asserts "reflect[] facts above the speculative level,"

however, he does not explain the relevance of these attachments, nor does he explain the

connection between any allegation or attachment to any particular Defendant.  *Id.*  Even as

supplemented in Mr. Saunders's bulleted list, the allegations of predicate acts in Mr. Saunders's

RICO allegations are little more than a "[t]hreadbare recital[] of the elements of a cause of

action, supported by mere conclusory statements," and are therefore insufficient to withstand a

motion to dismiss applying the standard of Federal Rule of Civil Procedure 8, *see Iqbal*, 556 U.S.

at 678, much less one applying the heightened standard of Federal Rule of Civil Procedure 9.

The Complaint's numerous, vague references to fraud fail to give the Defendants sufficient

information to answer the Complaint.  *See United States ex rel. Williams*, 389 F.3d at 1256–57.

For these reasons, the Court finds that Mr. Saunders's RICO claim, construed liberally in light of

his *pro se* status, fails to state a claim upon which relief can be granted.

### c. Criminal Statutes

Mr. Saunders has brought claims under a number of federal criminal statutes found in

Title 18 of the United States Code.  *See* Compl. at 5–6 ("Plaintiff brings claims under [a list of

criminal statutes].").  Calibre and Attorney Defendants argue that because—with one

exception—the statutes relied on by Mr. Saunders do not create a private right of action, those claims must be dismissed for failure to state a claim.[17]  *See* Calibre Mem. at 10–11; Att'y Defs.' Mem. at 14–15.  The Court agrees, and the claims brought under federal criminal statutes must be dismissed.

As a general rule, criminal statutes do not create a private right of action, meaning they cannot be relied on by a civil plaintiff to state a claim for relief.  *Keyter v. Bush*, No. 04-5324, 2005 WL 375623, at *1 (D.C. Cir. Feb. 16, 2005) (citing *Rockefeller v. U.S. Court of Appeals for the Tenth Circuit*, 248 F. Supp. 2d 17, 20 (D.D.C.2003)).  Furthermore, the "Supreme Court has refused to imply a private right of action in 'a bare criminal statute.'"  *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007) (quoting *Cort v. Ash*, 422 U.S. 66, 79–80 (1975)).  With one exception, computer fraud, the criminal statutes upon which Mr. Saunders relies do not create a private right of action.  *See Dinsdale v. Ad TelAmerica Inc.*, No. 14-3427, 2015 WL 1757473, at *4 (N.D. Tex. Apr. 17, 2015) (holding that 18 U.S.C. § 1029, access device fraud, does not create a private right of action); *Ellis v. CapitalSource Bank FBO Aeon Fin., LLC*, 924 F. Supp. 2d 282, 286 (D.D.C. 2013) (holding that 18 U.S.C. § 1341, mail fraud, does not create a private right of action); *Prunte*, 484 F. Supp. 2d at 43 (holding that 18 U.S.C. § 1344, bank fraud, does not create a private right of action); *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302–03 (E.D.N.Y. 2004) (holding that 18 U.S.C. § 1028, identity fraud, and 18 U.S.C. § 1341, mail

---

[17] In their replies, Calibre and Attorney Defendants argue that Mr. Saunders has failed to respond to their arguments on this point, and thus waives his right to oppose the dismissal of his claims asserting violations of criminal statutes.  *See* Calibre Reply at 2; Att'y Defs.' Reply at 1–2.  Issues raised in a dispositive motion are conceded if not opposed.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  Even if Mr. Saunders had not conceded the argument, the Court would dismiss the claims for the reasons explained below.

fraud, do not create a private right of action); *Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 260 n.1 (D.D.C. 2005) (holding that 18 U.S.C. § 216, penalties for bribery, graft and conflicts of interest, does not create a private right of action); *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 458, 466 (D.D.C. 1994) (holding that 18 U.S.C. § 1341, mail fraud, and § 1343, wire fraud, do not create a private right of action).  Therefore, the Court must dismiss Mr. Saunders's claims that have been brought pursuant to these criminal statutes because they cannot possibly state a claim for relief.

Mr. Saunders has also alleged a violation of the Computer Fraud and Abuse Act, which does explicitly create a private right of action.  *See* Compl. at 5; *see also* 18 U.S.C. § 1030.  The statute is "intended 'primarily to deter computer hacking.'"  *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 102 (D.D.C. 2015) (quoting *Lewis–Burke Assocs., LLC v. Widder*, 725 F. Supp. 2d 187, 194 (D.D.C. 2010)).  The Act provides a private right of action for any person "suffering damage or loss" from a violation of the act.  *See* 18 U.S.C. § 1030(g).

Mr. Saunders makes only a passing reference to the statute in his Complaint, and fails to address it at all in his opposition to the motions to dismiss.  *See* Compl. at 5; *see generally* Pl's. Opp'n.  Mr. Saunders has failed to connect his reference to Section 1030 with any of the factual allegations found in his Complaint.  *See* Compl. at 5. Section 1030 contains seven subsections that describe separate violations under the Act.  *See* 18 U.S.C. § 1030(a)(1)–(7).  Mr. Saunders does not elaborate on the elements of any subsection, or suggest which he believes is implicated in this case.[18]  Taking Mr. Saunders's allegations as true, the Court finds that the Complaint fails

---

[18] The Court notes that some of the subsections include a requirement that a purported violator act with "intent to defraud."  18 U.S.C. § 1030(a)(4), (6).  Rule 9(b) creates a heightened pleading standard for allegations of fraud and requires a complaint to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Specifically, Mr. Saunders must allege "the time, place and content of the false misrepresentations, the fact misrepresented

to state a claim for relief under the Act.  Thus, the Court will also dismiss Mr. Saunders's claim

under the Computer Fraud and Abuse Act.

### C. Supplemental Jurisdiction

The Court now turns to Mr. Saunders's claims under District of Columbia statutes and

common law.  The Complaint does not explain why Mr. Saunders believes this Court has subject

matter jurisdiction to hear the case.  Mr. Saunders's opposition, on the other hand, asserts that

this Court has federal question jurisdiction over claims arising under federal statutes and that the

Court should exercise supplemental jurisdiction over related state law claims.  *See* Pl.'s Opp'n at

4 ("In certain circumstances, § 1331 may also provide a federal court with an independent basis

for exercising jurisdiction over related state-law claims.").  At no point does Mr. Saunders assert

that this Court has diversity jurisdiction over these claims under 28 U.S.C. § 1332.[19]

Having determined that Mr. Saunders's federal claims must be dismissed, the Court

declines to exercise supplemental jurisdiction over the remaining District of Columbia claims.

As Mr. Saunders acknowledges, *see* Pl.'s Opp'n at 4, the Court has discretion to decline to

exercise supplemental jurisdiction, *see* 28 U.S.C. § 1367(c)(3) ("The district courts may decline

to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over

which it has original jurisdiction . . . .").  Federal district courts are required to balance a range of

factors including judicial economy, convenience, fairness, and comity when exercising that

_____

and what was retained or given up as a consequence of the fraud," as well as the specific
individuals involved.  *United States ex rel. Williams*, 389 F.3d at 1256 (internal quotation marks
omitted) (quoting *Kowal*, 16 F.3d at 1278).  Mr. Saunders has not met that burden here.

[19] Even if Mr. Saunders had raised the possibility of diversity jurisdiction, the record does
not indicate that there is complete diversity, meaning all plaintiffs are diverse from all
defendants.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  Instead, Mr. Saunders and
Calibre are both residents of Maryland according to the Complaint.  *See* Compl. at 1–2.

discretion, but the D.C. Circuit has instructed that, in "the usual case in which all federal-law claims are dismissed before trial," the relevant factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (internal quotation marks omitted) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Mr. Saunders fails to show why this is not "the usual case." Mr. Saunders asserts that state claims involving an ERISA fiduciary may be removed to federal court, *see* Pl's. Opp'n at 3, but that fact is irrelevant here. Removal jurisdiction is predicated on the existence of another basis of jurisdiction, such as diversity or a federal question. *See* 28 U.S.C. § 1441(b)–(c). As previously explained, those bases of jurisdiction are not present in this case. Finally, Mr. Saunders argues that the Court should exercise jurisdiction because "the original action circulates around . . . reliance and abuse of a federal statute." Pl.'s Opp'n at 7. It is axiomatic that "neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). Standing alone, the fact that the Trust's founding documents refer to ERISA is not sufficient to bring this case within the realm of this Court's jurisdiction. *See Hall v. Maine Mun. Emps. Health Tr.*, 93 F. Supp. 2d 73, 75 (D. Me. 2000) ("[D]esire and compliance do not an ERISA plan make. A benefit plan does not choose whether to opt in or opt out of ERISA."); *Triplett v. United Behavioral Health Sys., Inc.*, No. 98-3065, 1999 WL 238944, at *3 (E.D. Pa. Mar. 29, 1999) ("There is no reason to think that a plan's determination of its status under ERISA is any more meaningful than any litigant's

determination of its status under any statute."); *Clark v. Grp. Plan for Emps. of N. Tonawanda Pub. Schs.*, 845 F.Supp. 117, 120 (W.D.N.Y. 1994) (finding that a government plan was exempt from ERISA despite a "statement of ERISA rights" in the group plan booklet).

Because only Mr. Saunders's non-federal claims remain and the litigation is still in its early stages, the Court declines to exercise supplemental jurisdiction over the remaining claims and will dismiss them without prejudice so that Mr. Saunders, if he chooses, can bring them before a District of Columbia court for adjudication on the merits. *See generally* 28 U.S.C. § 1367(c)(1); *Carnegie-Mellon Univ.*, 484 U.S. at 350 (1988) ("When . . . the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (footnote omitted).

### D.  Appointment of Counsel

Mr. Saunders requests that the Court appoint counsel to represent him in this matter, citing the Local Rule that permits the Court to appoint pro bono counsel to "assist or represent the needy in civil matters." *See* Pl.'s Opp'n at 16 (citing D.D.C. Civ. R. 83.10); *see also* Compl. at 24. Mr. Saunders asserts that this litigation is "not a level playing field as the controversy affects 5000 teachers [and] involves $8.5 million, the DC Government, Department of Labor, and federal statutes." Pl.'s Opp'n at 15. Mr. Saunders adds that he is a full-time public school teacher. *Id.* at 16.

A civil plaintiff is not guaranteed counsel. *See Gaviria v. Reynolds*, 476 F.3d 940, 943 (D.C. Cir. 2007). However, federal courts are authorized by statute to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *accord Willis v. FBI,* 274 F.3d 531, 532 (D.C. Cir. 2001). In determining whether it is appropriate to appoint

counsel to a *pro se* litigant proceeding *in forma pauperis*,[20] courts in this district consider the following factors:

> (i) the nature and complexity of the action;
>
> (ii) the potential merit of the *pro se* party's claims;
>
> (iii) the demonstrated inability of the *pro se* party to retain counsel by other means; and
>
> (iv) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel.

D.D.C. Civ. R. 83.11(b)(3); *Gaviria,* 476 F.3d at 943 & n.2 (citing Rule 83.11 as "the appropriate metric for evaluating appointment of counsel").

Under the first factor, the Court acknowledges that this case includes a relatively large number of parties and legal concepts.  On first glance, this complexity appears to tip the balance in favor of assigning counsel to represent Mr. Saunders.  The complexity, however, is largely the result of Mr. Saunders's decision to raise so many claims and name so many Defendants.  The discrete issues themselves are not particularly complex.  Nor does this case present complex questions of fact or the need for expert testimony.  The case does, however, involve large sums of money and the rights of many DCPS teachers.  Thus, the first factor provides some support for Mr. Saunders's request, but the balance is tipped only slightly in his favor.  The other three factors, however, strongly suggest that the Court need not appoint civil counsel in this case.

The second factor turns on the potential merits of Mr. Saunders's claim.  Here, the Court has already considered the merit of Mr. Saunders's case and granted motions to dismiss his

---

[20] The Court notes that Mr. Saunders has not moved to proceed *in forma pauperis*.  The relevant Local Rule appears to apply only to "*pro se* parties who are proceeding *in forma pauperis*."  *See* D.D.C. Civ. R. 83.11(b).  Even assuming that the rule applies to Mr. Saunders, the Court finds that it is not necessary to appoint counsel.

claims.  The third factor instructs the Court to consider the party's attempts to acquire counsel.

Mr. Saunders provides very little information that would allow the Court to evaluate whether

Plaintiff should be appointed counsel.  Mr. Saunders has provided no information about his prior

attempts to secure counsel, and the Court is not aware of any such attempt.  Furthermore, Mr.

Saunders has not moved to proceed *in forma pauperis* and he provides no additional information

about his financial situation, aside from stating that he is fully employed—i.e., a full-time public

school teacher.  *See* Pl.'s Opp'n at 16.  Although "a court should not insist that a plaintiff be

destitute," *Poindexter v. FBI*, 737 F.2d 1173, 1186 (D.C. Cir. 1984), a party seeking court-

appointed counsel in a civil matter "should present at least some evidence of financial need aside

from the lack of a permanent job," *Greggs v. Autism Speaks*, 987 F. Supp. 2d 48, 51 (D.D.C.

2013).  Although Mr. Saunders's appears to be arguing that public school teachers are not highly

paid, he has plainly shown that he has a stable income.  Taking the unusual step of appointing

civil counsel would be particularly inappropriate in light of Mr. Saunders's failure to show that

he has previously sought counsel and his failure to show with any detail that he cannot afford

counsel.  Finally, the fourth factor asks whether the interests of justice will be served by

appointing counsel.  As a school teacher, Mr. Sanders is clearly an educated man.  Mr.

Saunders's pleadings—although occasionally unclear—suggest that he is coherent and attentive,

and is capable of adequately representing himself.  The Court also notes that Mr. Saunders has

had success representing himself in another proceeding in this District.  *See generally Saunders*

*v. Hankerson*, 312 F. Supp. 2d 46 (D.D.C. 2004) (refusing to dismiss Mr. Saunders's suit against

his union and union officials).  Upon consideration of each of the four factors, the Court finds

that it is not necessary to appoint civil counsel to Mr. Saunders in this matter.

### E.  Leave to Amend

Finally, Mr. Saunders argues that he should be permitted to amend his pleadings.  Mr. Saunders appears to link his request to amend with his request that the Court appoint counsel. *See* Pl.'s Opp'n at 19 ("The right to replead based on the courts [sic] ruling with assistance of counsel is equitable giving the outrageous nature of this case and loss of an $8.5 million employee benefit plan.").  More generally, Mr. Saunders requests "an opportunity for repleading" if the Court "decide[s] to grant any motion to dismiss any claim." *Id.* at 20.  In support of this position, Mr. Saunders cites Federal Rule of Civil Procedure 15. *Id.* at 20–21.

A motion seeking leave to amend a pleading, like all motions, requires the moving party to "state with particularity the grounds for seeking the order" and to "state the relief sought." Fed. R. Civ. P. 7(b)(1)(B)–(C).  Courts have held that a brief, nonspecific request to amend included in a memorandum does not constitute a legitimate motion. *See, e.g., Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) (citing 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1473 (2d ed. 1990)).  Other courts have denied a motion for leave to amend when the moving party fails to attach or set forth the substance of its proposed amendment. *See, e.g., United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360–62 (11th Cir. 2006).  The D.C. Circuit has held that "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion" for leave to amend. *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993); *see also Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010).  Although the Court acknowledges Mr. Saunders's *pro se* status, even *pro se* litigants "must comply with the Federal Rules of Civil Procedure." *Idrogo v.*

*Foxx*, 990 F. Supp. 2d 5, 6 (D.D.C. 2013) (citing *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987)).

In his opposition to the motions to dismiss, Mr. Saunders simply requests leave to "replead." Pl's. Opp'n at 19–20.  Mr. Saunders does not provide any hint as to what additional facts he intends to plead, if granted leave to amend.[21]  At this time, the Court has already considered supplemental factual allegations found in Mr. Saunders's opposition.  *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015).  In *Confederate Mem'l Ass'n*, the D.C. Circuit noted that the decision to deny leave to amend was bolstered by the fact that the plaintiffs "had multiple bites at the apple already."  995 F.2d at 299.  Because Mr. Saunders has provided nothing more than "a bare request in an opposition" to the motions to dismiss, without providing any indication of the grounds upon which he seeks to amend, the Court will deny leave to amend.  *Id.*[22]

---

[21] Even if Mr. Saunders's request were made in the form of a proper motion, the proposed amendment appears to be futile.  Typically, leave to amend a complaint should be freely given "when justice so requires." Fed R. Civ. P. 15(a)(2).  In deciding whether to allow a party to amend a complaint, however, courts may consider the "futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "An amendment would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."  *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002) (citation omitted).  Because Mr. Saunders has not put forth any new facts, any proposed amendment would be futile.

[22] Considering Mr. Saunders's opposition in the most favorable light, his brief mention of the Labor Management Reporting and Disclosure Act ("LMRDA") could be construed as a new claim.  *See* Pl.'s Opp'n at 18; *see also* 29 U.S.C. § 401.  It is not clear that the LMRDA has any relevance to this case, however.  The LMRDA governs internal union affairs, and is intended "to protect employees' rights to organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid or protection."  29 U.S.C. § 401(a).  Mr. Saunders has not identified any particular provision of the LMRDA that he believes is relevant or explained how his factual allegations relate to the statute.

## IV.  CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Motion to Dismiss filed by Secretary Perez and dismiss the Complaint as to Secretary Perez for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The Court will also **GRANT** the Motions to Dismiss filed by Board Affiliate Defendants, Calibre, and Attorney Defendants for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Finally, the Court will **DENY** Mr. Saunders's request that the Court appoint an attorney to represent him in this case, and **DENY** Mr. Saunders's request for leave to amend his claims.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 15, 2016                                    RUDOLPH CONTRERAS
                                                             United States District Judge